### LEWIS–KURES et al. v. EDWARD R. WALSH & CO., Inc.
### No. 44.

Circuit Court of Appeals, Second Circuit.
Feb. 20, 1939.

James J. Mahoney, of New York City (James J. Mahoney and George J. Stacy, both of New York City, of counsel), for appellant.

Silas B. Axtell, of New York City, for appellees.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Jurisdiction of the district court rests on diverse citizenship, the plaintiffs, husband and wife, being residents of New Jersey and the defendant a New York corporation. In 1936 the defendant was engaged as a subcontractor in demolishing the United States Post Office building at Troy, N. Y. While this work was in progress, Mrs. Lewis-Kures (for convenience called the plaintiff) sustained a fall on the steps of this building, resulting in personal injuries for which she sought to recover damages from the defendant. Her husband joined in the complaint, alleging a cause of action for loss of her services and companionship. Upon the verdict of a jury they obtained a judgment from which the defendant has appealed, assigning the following grounds for reversal: (1) the plaintiff was a mere trespasser upon the premises; (2) the evidence was insufficient to establish negligence on the part of the defendant; (3) the accident resulted from the plaintiff's own negligence; and (4) error was committed in the denial of requested charges.

The first question is whether the plaintiff was, as she contends, a business visitor upon the premises, or, as the appellant contends, a trespasser. The building had been vacated, and a temporary postoffice had been set up across the street, some three weeks before September 1, 1936, the date of the accident; but the plaintiff testified that she saw no signs telling of the change of location of the postoffice, and that it was not until she had mounted the steps of the Broadway entrance near the corner of Fourth Street and had looked inside the building that she realized it was unoccupied. The issue of fact chiefly litigated was whether the appearance of the building, as she approached it from the west, was such that she should have known that it was being demolished. She admitted that along Broadway a sidewalk "bridge" was being constructed which extended from the easterly end of the building to the easterly side of the steps she ascended, but she thought this indicated outside repairs rather than exclusion of the public from the postoffice. The defendant had started the work of demolition on August 24th, and gave testimony that by September 1st a protecting fence extended along the entire Broadway side of the building, with a door in the fence which the plaintiff opened and passed through to reach the steps, and with warning signs posted on each side of the door to inform the public that the premises were not in use as a postoffice. After verdict we must assume all controverted facts in favor of the plaintiff; hence we must take it that the jury accepted the testimony of the plaintiff and her witnesses and found that she could reasonably believe from the condition of the premises, and did believe, that postoffice business was still being conducted within the building. Consequently, the invitation impliedly extended to the plaintiff as a member of the public to enter the building to mail a letter had not been effectively revoked, and it cannot be successfully urged that she was a trespasser. She was either a gratuitous licensee or a business visitor (Am.L.Inst.Torts, secs. 330-332) and since there was evidence from which the jury could find that the plaintiff entered upon the premises for the purpose of mailing a letter, we shall assume for purposes of decision that she was a business visitor. But the jury was not adequately instructed upon this highly controversial issue. It was told to find whether there was a fence in front of the steps and whether the plaintiff entered through a door in the fence, if there was a fence; but it was not told that if those facts were found in the defendant's favor, the plain-

tiff was a trespasser and not entitled to recover. Nor was it instructed that a similar result would follow, if it found that open and obvious signs gave warning that the building was no longer used as a postoffice. The defendant's 7th and 9th requests to charge should have been given. Hence the judgment must be reversed in any event.

■ This conclusion does not, however, avoid the necessity of passing upon the appellant's argument that the evidence was insufficient to establish negligence on the part of the defendant. A motion to dismiss on this ground was reserved, with the tacit consent of the parties, until after verdict. It was then denied. If it should have been granted, this court may direct a judgment of dismissal. Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L. Ed. 1636.

■■ Assuming that the plaintiff was a business visitor, the defendant owed her the same duty of protection from bodily harm as though it were itself the possessor of the land. Am.L.Inst.Torts, § 383; Oregon-Washington R. & N. Co. v. Branham, 9 Cir., 259 F. 555; McGlone v. William Angus, Inc., 248 N.Y. 197, 161 N.E. 469; Hall v. Barber Door Co., 218 Cal. 412, 23 P.2d 279. The duty owed by a possessor of land to a business visitor is not that of an insurer. He is liable only if he knows, or in exercise of reasonable care should know, of a condition that he should realize involves unreasonable risk to business visitors, has no reason to believe that they will discover the condition or realize the risk, and permits them to enter without exercising care to make the condition reasonably safe or to give adequate warning of the danger. Am. L.Inst.Torts, § 343. Whether there was evidence from which the jury could find that the defendant had failed in such duty is the next question for consideration.

■ The accident occurred on a flight of seven granite steps leading from the sidewalk through doors, that were open, into the lobby of the postoffice. The top step was a platform four feet wide; the step next below it, on which the plaintiff says she fell, was about ten inches in width and five or six feet in length. At its center, lengthwise, was a crack that "looked like a joint" and she noticed that it was "right near" her foot as she stopped. In ascending the steps she had observed that they were littered with "what looked like pieces of cement, chips of wood." Having seen through the open doorway that the building had been vacated by the postoffice, the plaintiff was about to descend the steps. As she turned to speak with a workman on the scaffolding that extended to the easterly end of the steps, she stepped on something that rolled under her foot and she felt the heel of her shoe catch momentarily in the crack, causing her to fall. Two witnesses for the plaintiff who examined the steps immediately after the accident testified as to the crack or hole in the step. One said it was a quarter of an inch deep and an inch in width; the other said it was three-quarters of an inch deep and "looked as if they were chiselling that mortar out of that step."

Whether it was negligent to permit the steps to be littered with pieces of cement and chips of wood depends upon the character and extent of the litter and the risk involved thereby to users of the steps. To create liability the condition must be such that the defendant should realize that it involves an unreasonable risk to business visitors and that they will not discover themselves the condition or realize the risk. The plaintiff's testimony was very vague as to the quantity of litter or the size of the wooden chips or fragments of cement. Whether they were of such a character that the defendant, if it had known of them, should have realized that they involved "an unreasonable risk" to persons using the steps is left wholly in the realm of conjecture; but the risk, whatever it was, would seem to be as apparent to users of the steps as to the defendant, for they could see that a scaffolding was being erected adjacent to the steps, and any implied invitation to use the steps was to use them in such condition with respect to visible litter as the adjacent work might create. See Downes v. Elmira Bridge Co., 179 N.Y. 136, 141, 71 N.E. 743. The steps were exposed to broad daylight, the litter was obvious, and it was in fact seen by the plaintiff. On this record we think that the jury would not have been justified in finding that the defendant should have realized that the condition was one involving an unreasonable risk which users of the steps would not themselves realize. Moreover, the record is barren of evidence that any agent of the defendant knew of the litter; or that it had existed so long that its presence should have been discovered. Even if it may fairly be inferred that workmen of the defendant had caused the litter to fall on the steps in the course of their employ-

ment, this would not impose liability unless the litter involved an unreasonable risk. As already indicated we do not think it did. Not every small piece of litter on which a business guest may slip creates a case for the jury. See Norton v. Hudner, 213 Mass. 257, 100 N.E. 546, 44 L.R.A.,N. S., 79; Emerson v. S. S. Kresge Co., 8 Cir., 259 F. 206; Kipp v. F. W. Woolworth & Co., 150 App.Div. 283, 134 N.Y.S. 646; Wentz v. J. J. Newberry Co., 245 App.Div. 790, 280 N.Y.S. 824; Sennert v. Weisbecker, 82 Misc. 449, 143 N.Y.S. 1039.

■ The evidence is similarly defective as to the crack or hole in which the heel of the plaintiff's shoe was caught. If it was a hole of recent creation, there is no proof that it had existed for such a time that the defendant in the exercise of reasonable care should have discovered it. Probably it was not of recent creation, for the defendant's witness testified that no work was done toward demolishing the steps until November. Even if the crevice were of long standing, it was so slight a defect that continued use of the steps should be held as a matter of law not to constitute negligence. See Kraus v. Wolf, 253 N.Y. 300, 171 N.E. 63; Dwyer v. Hill Brothers Co., 79 App.Div. 45, 79 N.Y.S. 785; Tryon v. Chalmers, 205 App.Div. 816, 200 N.Y. S. 362; Stark v. Franklin Simon & Co., 237 App.Div. 42, 260 N.Y.S. 691; Chapman v. Clothier, 274 Pa. 394, 118 A. 356. Consequently we conclude that neither with respect to the crack nor with respect to the litter was there evidence of negligence sufficient to go to the jury. The defendant's motion to dismiss should have been granted. Accordingly the judgment is reversed with directions to enter a judgment for the defendant.